# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-075-DCK

| | |
|---|---|
| ROSA CAMILLA IVEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 11) and "Defendant's Motion For Summary Judgment" (Document No. 14). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that "Plaintiff's Motion For Summary Judgment" (Document No. 11) be denied; that "Defendant's Motion For Summary Judgment" (Document No. 14) be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

In this case, Plaintiff Rosa Camilla Ivey ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On or about September 17, 2013, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning April 26,

2013. (Transcript of the Record of Proceedings ("Tr.") 15, 241). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about March 20, 2014, and again after reconsideration on or about August 1, 2014. (Tr. 15, 164, 173). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition will not remain severe enough for 12 continuous months to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. Although the condition is severe, it is not expected to remain disabling for at least twelve continuous months as the law requires.
>
> We do not have sufficient vocational information to determine whether you will be able to perform any of your past relevant work in the future. However, based on the evidence in file, we have determined that you will be able to adjust to other work.
>
> It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 173).

Plaintiff filed a timely written request for a hearing on August 29, 2014. (Tr. 15, 182). On October 12, 2016, Plaintiff appeared and testified at a hearing before Administrative Law Judge Susan Poulos (the "ALJ"). (Tr. 15, 36-65). In addition, Brenda Cartwright, Ed.D., a vocational expert ("VE"), and Lindsey Robison, one of Plaintiff's attorneys, appeared at the hearing. Id. Plaintiff amended her alleged onset date to September 17, 2013. (Tr. 15, 64).

This is not Plaintiff's first disability case. A prior unfavorable decision was issued by a different ALJ on June 26, 2013, with regard to Plaintiff's prior Title II and Title XVI claims that alleged disability beginning on January 1, 2010, which was not appealed. (Tr. 15, 69-77). The date of the prior decision is before the amended alleged onset date in this case. In that earlier case, the ALJ found that Plaintiff had several severe impairments: chronic abdominal pain secondary

2

to a combination of gastritis and irritable bowel syndrome; depression; and anxiety. (Tr. 71). The ALJ found in that first case that Plaintiff was not disabled. (Tr. 15, 77).

In this case, the ALJ likewise issued an unfavorable decision on February 15, 2017, denying Plaintiff's claim. (Tr. 15-30). On February 28, 2017, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on December 13, 2017. (Tr. 1-3, 240). The ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on February 13, 2018. (Document No. 1). On August 13, 2018, the parties consented to the Magistrate Judge jurisdiction in this matter. (Document No. 13)

"Plaintiff's Motion For Summary Judgment" (Document No. 11) and "Plaintiff's Memorandum Of Law In Support Of A Motion For Summary Judgment Pursuant To Fed. R. Civ. P. 56" (Document No. 12) were filed June 19, 2018. "Defendant's Motion For Summary Judgment" (Document No. 14) and "Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment" (Document No. 15) were filed August 13, 2018. Plaintiff declined to file a reply brief, and the time to do so has lapsed. See Local Rule 7.2 (e).

Based on the foregoing, the pending motions are now ripe for review and disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.   DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 16, 2013, and the date her decision.[1]  (Tr. 29). To establish entitlement to benefits, Plaintiff has the burden of proving

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

4

that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fourth and fifth steps that Plaintiff was not disabled. (Tr. 27-29).

---

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since September 17, 2013, her amended alleged disability onset date. (Tr. 18). At the second step, the ALJ found that mild thoracic scoliosis, mild lumbar degenerative disc disease, and hypertension were severe impairments.[2] (Tr. 18). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 21).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform medium work activity, with the following limitations:

> could frequently climb ladders, ropes and scaffolds and ramps and stairs.

(Tr. 21). In making this finding, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id.

At the fourth step, the ALJ held that Plaintiff could perform her past relevant work as a hospital food service worker, industrial cleaner, and home attendant. (Tr. 27). At the fifth and final step, the ALJ concluded in the alternative, based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that there are other jobs existing in the national economy that she is also able to perform." (Tr. 28). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included companion, bagger, caretaker, and hand packager. (Tr. 29, 58-63). Therefore, the ALJ

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 16, 2013, and the date of her decision, February 15, 2017. (Tr. 29-30).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ erred in failing to find asthma as a severe impairment at Step 2; and (2) the ALJ's RFC determination is not supported by substantial evidence, especially as it pertains to her consideration of the treating physician's testimony. (Document No. 12, p. 6). The undersigned will discuss each of these contentions in turn.

**A. Asthma as a Severe Impairment**

In her first assignment of error, Plaintiff argues that the ALJ erred in failing to find asthma as a severe impairment at step two. (Document No. 12, pp. 6-10). Plaintiff first argues the ALJ improperly relied on Plaintiff's failure to quit smoking when determining her asthma was not severe. Plaintiff contends that in cases of tobacco abuse, the ALJ must find the Plaintiff is able to voluntarily stop smoking. (Document 12, p. 7). Plaintiff asserts "[i]f the ALJ finds that [P]laintiff cannot . . . voluntarily stop smoking, her failure . . . to stop smoking is not a failure to follow prescribed treatment and cannot be held against her." (Document 12, p. 7) (quoting Carothers v. Heckler, 627 F.Supp. 301, 304 (W.D.N.C. 1985)). Plaintiff argues the ALJ made no such finding in this case despite evidence from 2012 to 2016 showing Plaintiff clearly attempted to stop smoking by cutting down her usage throughout the relevant time period. Thus, Plaintiff argues, the continued smoking is not voluntary and cannot be used against her as a failure to follow prescribed treatment.

Second, Plaintiff argues the ALJ failed to consider all of the available evidence when determining Plaintiff's asthma was not severe. Plaintiff alleges that even though the ALJ cites to the consultative examination report, the ALJ fails to consider the Plaintiff's shortness of breath,

wheezing in both lung bases, and the FEV1 value from the pulmonary function testing in the report. (Document 12, p. 8) (citing Tr. 20) (citing Tr. 448-458). Plaintiff's best FEV1 value from the testing was 1.88 (T 455), .03 above listing level severity for her height. 20 C.F.R. Part 404, Subpart P, App'x 1, § 3.03A. (Document No. 12, p. 8) (citing Tr. 455). Further, Plaintiff argues the ALJ failed to mention or consider evidence from the treating physician, Dr. Carl A. Hughes, III ("Dr. Hughes") that offers further proof that Plaintiff's asthma is severe. (Document 12, p. 9).

In response, Defendant argues the ALJ's determination of asthma as a non-severe impairment is supported by substantial evidence and the ALJ provided ample, well-supported reasons, referring to evidence, to support her finding. (Document 15, p. 7) (citing Tr. 18, 20). Asserting that substantial evidence supports the ALJ decision, Defendant states:

> In August 2012, prior to Ms. Ivey's amended alleged onset date, she was diagnosed with asthma and pulmonary function tests showed a mixed restrictive and obstructive pattern (Tr. 385). In March 2013, prior to her amended alleged onset date, Ms. Ivey's asthma was noted to be uncontrolled due to smoking (Tr. 372). However, records dated November 2013 through July 2016, during the period at issue, document that Ms. Ivey's asthma was well controlled (except for an instance where it was noted to be uncontrolled due to tobacco use) (Tr. 354, 361, 514), her lungs were clear to auscultation bilaterally without wheezes, rubs, or rhonchi (Tr. 353, 463, 498, 503, 508, 511, 514, 517), her respirations were non-labored with equal breath sounds (Tr. 525, 551, 567), and she did not have shortness of breath (Tr. 427, 523, 536, 564).

(Document 15, p. 6).

Defendant notes Plaintiff's continuing to smoke a pack of cigarettes every two days was only one of several factors considered in finding Plaintiff's asthma non-severe. (Document No. 15, pp. 7-8) (citing Tr. 18). Defendant claims the ALJ also considered Plaintiff's activities, including moving furniture and scrubbing her carpets, as well as examinations and testing during

8

the period at issue, citing to Dr. Tuan Huynh's ("Dr. Huynh") consultative examination opinion. (Document No. 15, p. 8) (citing Tr. 18, 20) (citing 512, 448-458).

Defendant describes the ALJ's analysis as follows:

> The ALJ's finding was supported by the consultative examination opinion from Dr. Huynh (Tr. 449-58). Ms. Ivey reported to Dr. Huynh that she was doing well on her current medications, she followed up with her primary care doctor every six months, and she denied any hospitalizations or emergency room visits due to asthma in the last year (Tr. 449). On exam, Dr. Huynh noted some bibasilar wheezing and noted that Ms. Ivey reported shortness of breath and wheezing (Tr. 450-51). However, Dr. Huynh opined that Ms. Ivey's conditions only resulted in mild postural and mild exertional limitations (Tr. 452). He opined that Ms. Ivey was mildly impaired in sitting, standing, moving about, lifting, and carrying. (Tr. 452). The ALJ's finding was also supported by the opinion of the State agency medical consultant, Dr. Horne, who reviewed the record and did not opine that asthma was a severe impairment (Tr. 140, 155). Overall, these opinions indicated that Ms. Ivey's asthma was not an impairment which "significantly limits" her ability to do basic work activities, as required to be severe. 20 C.F.R. §§ 404.1520, 416.920.

(Document 15, p. 7).

Defendant asserts further:

> While Dr. Huynh's report does indicate that Ms. Ivey had some bibasilar wheezing and a FEV1 value of 1.88, Dr. Huynh opined that Ms. Ivey only had mild postural and mild exertional limitations, which does not suggest that asthma significantly limited Ms. Ivey's ability to do work activities (Tr. 451-52, 455). Ms. Ivey does not identify any record evidence establishing that asthma actually imposed functional limitations (Pl. Br. 6-10). It is not enough to simply infer, as Ms. Ivey does in her brief, that the impairment must have imposed limitations. (Pl. Br. 10). To the contrary, doing so would be entirely improper. *See* 20 C.F.R. §§ 404.1920b, 416.920b ("After we review all of the evidence relevant to your claim. . .we make findings about what the evidence shows.").

(Document 15, p. 9).

Defendant argues the ALJ is not required to refer to every piece of evidence in the record and an ALJ's failure to cite a specific piece of evidence is not an indication that the evidence was

not considered. (Document 15, p. 8-9) (citations omitted). Instead, Defendant notes, the ALJ concluded that asthma was "not severe based on examination and testing during the period at issue." (Document No. 15, p. 9) (citing Tr. 20) (citing Tr. 448-458). Moreover, Defendant notes that "after the alleged onset date the record indicates that Ms. Ivey's asthma was well controlled (except for an instance where it was noted to be uncontrolled due to tobacco use)." (Document No. 15, p. 10 (citing Tr. 354, 361, 514).

The undersigned finds Defendant's arguments persuasive that substantial evidence supports the ALJ's determination that asthma is a non-severe impairment. (Document No. 15, pp. 5-10). It is clear the ALJ considered the record as a whole in determining the severity of Plaintiff's impairments.

Noting Plaintiff's severe and non-severe impairments, including asthma, the ALJ opined that that "the medical evidence fails to show that these conditions have had more than a minimal effect on the claimant's ability to perform basic work activities during the period at issue." (Tr. 18). The ALJ observed that Plaintiff continues to smoke a pack of cigarettes every two days despite having asthma, and that she was still able to move furniture and scrub her carpet. Id. (citing Tr. 512).

Additionally, the ALJ cites to Dr. Huynh's consultative examination report from March 2014. (Tr. 20) (citing Tr. 448-458). Dr. Huynh's report indicates that: Plaintiff "denied any ER visits or hospitalizations due to asthma in the last year;" asthma symptoms are "worse with walking" and improve "with rest and medications;" and that "she is doing well with her current medications." (Tr. 449). Plaintiff did complain of "cough, shortness of breath, [and] wheezing, dizziness." (Tr. 450). Relying on this report, the ALJ concluded "claimant's asthma and

abdominal pain are not severe based on examination and testing during the period at issue." (Tr. 20) (citing Tr. 448-458).

Citing reports from Dr. Hughes, Plaintiff's own brief indicates that she had numerous problems and complaints related to her asthma in 2012 and 2013, but by 2014 her "asthma was noted to be well controlled." (Document No. 12, p. 9) (citing Tr. 514) ("Her asthma has been well-controlled with her current inhalers using her rescue inhaler only once or twice a month. . . . She is seeking disability because of back pain and depression."). On January 19, 2015, Dr. Hughes observed that Plaintiff "has noticed some increased fatigue over the past couple of months without any shortness of breath or chest pain. (Tr. 508). "She still smokes, does not exercise, and has gained weight." Id.

Plaintiff's brief also observes that "[b]y July 20, 2016, Dr. Hughes noted that Plaintiff's breathing was stable." Id. (citing Tr. 498). More fully, Dr. Hughes opined on July 20, 2016, that:

> Her breathing has been stable and she is trying to quit smoking but continues to smoke 1-5 cigarettes daily. She denies any wheezing and has not had any nighttime awakenings due to shortness of breath or wheezing.

(Tr. 498). Dr. Hughes then described Plaintiff's lungs as "[c]lear to auscultation bilaterally without wheezes rubs or rhonchi." Id. See also (Tr. 501, 503, 505, 507, 509, 511, 515, 517).

Rather than suggesting further limitation or increased severity, Plaintiff's account of Dr. Hughes' findings actually indicate that Plaintiff's asthma was improving, stable, and responding to mediation during the time period in question. See (Document No. 12, p. 9); (Tr. 498-518).

It is also worth noting that all of a claimant's impairments are considered when determining the RFC. (Document No. 15, p. 5) (citing 20 C.F.R. §§ 404.1520, 416.920). As Defendant points out in its brief, once the Plaintiff meets the step two threshold with at least one impairment, the evidence for all alleged impairments, including medically determinable impairments that are not

11

severe, will be considered at subsequent steps. Id. Here, the ALJ determined that the Plaintiff satisfied the severity requirement in step two as to other impairments, and later included asthma as a non-severe impairment when determining the RFC. (Document No. 15, pp. 5-6) (citing Tr. 18, 20).

The undersigned finds that the ALJ properly considered Plaintiff's asthma.

## B. RFC and the Treating Physician

In the second assignment of error, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly rejected the opinion of Plaintiff's long-time treating physician, Dr. Hughes. (Document No. 12, pp. 10-14). Plaintiff alleges that the ALJ failed to follow the treating physician rule applicable in social security disability cases:

> If a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," it will be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). If the treating physician's opinion is not entitled to controlling weight, the ALJ must assess the opinion using six factors. 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6). These factors include: (i) the examining relationship; (ii) the length, nature, and extent of the treatment relationship; (iii) the evidence in support of the opinion; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6). The ALJ must provide more than a conclusory analysis of the opinion evidence in order to facilitate meaningful review. Monroe, 826 F.3d at 190.

(Document 12, p. 11).

Plaintiff asserts that Dr. Hughes had been her treating physician since 2001, "treated her for all of her impairments, and . . . saw her three to six times a year during the relevant period." Id. Citing a "Residual Functional Capacity Questionnaire," Plaintiff notes that Dr. Hughes opined, *inter alia*, that Plaintiff was able to sit 60 minutes at a time for eight hours a day, could stand/walk

12

15 minutes at a time for one hour a day, and could lift up to 10 pounds. (Document No. 12, p. 11) (citing Tr. 475-76). Dr. Hughes further opined that her symptoms, including dyspnea, wheezing, and fatigue, were often severe enough to interfere with attention and concentration. Id. Plaintiff argues that Dr. Hughes' opinion should have been given "significant, if not controlling, weight." (Document 12, p. 11).

Plaintiff further argues that the ALJ erred in favoring the testimony of the state agency reviewing physician over that of Dr. Hughes, the treating physician. (Document No. 12, p. 12). According to Plaintiff, there are only three factors that justify favoring a non-treating source over a treating source: "[s]upportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion." (Document No. 12, pp. 12-13) (quoting Brown, 873 F.3d at 268). Plaintiff contends that the opinion of the state agency consultant does not satisfy these three criteria. (Document No. 12, p. 13).

Among other things, Plaintiff re-asserts her asthma argument by alleging that the evidence shows that her asthma would have a significant impact on her ability to work – which was not considered by the state agency consultant – therefore, the state agency consultant's decision cannot be consistent with the record. Id.

For its part, Defendant responds that the ALJ treated this evidence from these physicians properly, and that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence. (Document No. 15, pp. 10-17). Defendant alleges the ALJ followed the treating physician rule in determining the claimant's RFC:

> In assessing a claimant's RFC, an ALJ is required to consider the medical opinions in the case record together with the rest of the

13

> relevant evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In weighing any medical opinion, an ALJ considers, as applicable, such factors as the examining relationship, treatment relationship, length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Agency regulations require that a treating source opinion be afforded controlling weight only if it is both "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). As the Court of Appeals noted in *Hines v. Barnhart*, the "[t]reating physician rule is not absolute." 453 F.3d 559, 563 (4th Cir. 2006). An "ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)(per curiam); *see also Hines*, 453 F.3d at 563.

(Document 15, pp. 10-11).

Defendant argues the ALJ provided several reasons for according only partial weight to Dr. Hughes' opinion. (Document No. 15, p. 12) (citing Tr. 20, 27). First, Dr. Hughes opined that Ms. Ivey would be absent from work more than four times per month, and would need a sit-stand option and additional breaks. Id. Additionally, Dr. Hughes identified, via check marks, Ms. Ivey's symptoms as wheezing, fatigue, back pain, and abdominal pain. (Document No. 15, pp. 12-13) (citing Tr. 475-76 and Williams v. Colvin, 1:14-CV-018-MOC, 2015 WL1000321, at *7 (W.D.N.C. Mar. 6, 2015)). Defendant asserts the ALJ explicitly noted that Dr. Hughes did *not* provide any relevant evidence, support, or explanation for these limitations or findings and thus, "his opinion was not due more than partial weight." Id.

Second, Defendant asserts the ALJ considered the medical evidence and record as a whole, as is required by the ALJ, to determine the consistency of medical opinions with other evidence. (Document 15, p. 13) (citing Tr. 26-27) (citing 353-54, 359, 450-54, 498, 503, 505-06, 509, 524, 536, 551-52, 568 539). The ALJ found the examinations indicated a normal range of motion,

14

normal strength, and a conservative treatment. (Document 15, p. 14); see also (Tr. 27). The ALJ concluded that these results do not support a finding that Ms. Ivey is as limited as opined by Dr. Hughes. Id. For these reasons, Defendant argues substantial evidence supports the partial weight given by the ALJ to Dr. Hughes' opinion. (Document No. 15, pp. 14-15).

Defendant further argues the ALJ was permitted to give more weight to the testimony of the state agency reviewing physician, Dr. Lillian Horne ("Dr. Horne"), over that of the treating physician, Dr. Hughes. (Document No. 15, pp. 15-16). Defendant distinguishes Brown v. Commissioner, 873 F.3d 251 from the present case, asserting the physician in Brown was a psychiatrist giving an opinion on physical impairments, whereas, in this case, Dr. Horne is a general practitioner with specialization in the subject matter to consider evidence related to Plaintiff's physical impairments. (Document No. 15, p. 16). Defendant further asserts Dr. Horne did consider evidence of asthma in rendering her opinion and that her opinion is consistent with the record. Id. (citing Tr. 140-43). Thus, Defendant claims substantial evidence supports the ALJ's evaluation of Dr. Horne's opinion. (Document No. 15, p. 17).

The undersigned finds that the ALJ properly evaluated and weighed the opinions of Dr. Hughes and Dr. Horne and provided an adequate explanation in assigning weight to the opinion evidence. In assigning great weight to Dr. Horne's opinion, the ALJ relied on significant evidence from the record. See (Tr. 25-26) (internal citations omitted). The ALJ reasoned that Dr. Horne's opinion was consistent with the medical evidence and went on to describe in extensive detail the specific medical evidence that supports this opinion:

> The limitation to medium exertional work with postural limitations is consistent with the medical evidence. In January 2014, the claimant [had] no radiating pain related to the pain in her back (Ex. 2F/7). She indicated that she took a muscle relaxer, which seemed to resolve the symptoms. Her exam showed she was well appearing, in no apparent distress, and she had no tenderness over the thoracic

spine or in the paraspinal muscles (Ex. 2F/8). Her doctor noted her x-ray showed no acute abnormality other than chronic scoliosis and told her to use Aleve as needed for back pain (Ex. 2F/8, 13). During her consultative examination in March 2014, she sat comfortably during the exam, her tandem walk was normal, and she was able to walk on her heels and tiptoes (Ex. 5F/3-4).

(Tr. 26).

Later in the decision, in assigning less weight to Dr. Hughes' opinion, the ALJ explained:

The undersigned directs partial weight to the July 2014 opinion of Dr. Hughes. . . First, Dr. Hughes did not indicate why the claimant would be absent from work more than four times per month or why she would need a sit-stand option or additional breaks. Additionally, the medical evidence demonstrates that the claimant is less limited to medium work with postural limitations, for the reasons noted above under the State agency opinion.

(Tr. 27). Notably, the ALJ gave "partial weight" to Dr. Hughes' opinion, and cited it throughout the decision, rather than fully rejecting it as Plaintiff suggests. See (Tr. 20, 23-24, 27) (internal citations omitted).

The above excerpts indicate an adequate explanation by the ALJ, citing substantial evidence in the record. (Tr. 26-27). The undersigned is persuaded that the ALJ thoroughly considered all medical opinions in the record together with the rest of the relevant evidence and assessed factors such as treatment relationship, frequency of examination, supportability, consistency with the record as a whole, and other factors that tend to support or contradict the opinion as required by 20 C.F.R. 404.1527(c)(1)-(6) and 416.927(c)(1)-(6). Substantial evidence has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established." Again, it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the ALJ – so long as that decision is supported by substantial evidence. The undersigned is satisfied that the ALJ's analysis and decision in assigning weight to opinion evidence is supported by substantial evidence in the record.

## IV.   CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971);  <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that:  "Plaintiff's Motion For Summary Judgment" (Document No. 11) is **DENIED**;  the "Defendant's Motion For Summary Judgment" (Document No. 14) is **GRANTED**;  and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: March 28, 2019

_____
David C. Keesler
United States Magistrate Judge